[Cite as *State v. Darr*, 2018-Ohio-2548.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 17CA0006-M |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| TIMOTHY DARR | COURT OF COMMON PLEAS |
| | COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 16CR0277 |

DECISION AND JOURNAL ENTRY

Dated: June 29, 2018

CARR, Judge.

{¶1} Appellant, Timothy Darr, appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} This matter arises out of Darr's arrest in the early morning hours of May 7, 2016. Law enforcement purportedly initiated the stop of Darr's vehicle pursuant to an outstanding arrest warrant. When the officers took Darr into custody, they discovered a significant amount of cocaine on his person. The officers also discovered a loaded handgun in the glove compartment as well as ammunition for the gun in the backseat of the vehicle.

{¶3} On May 19, 2016, the Medina County grand jury indicted Darr on one count of trafficking in cocaine, one count of possession of cocaine, and one count of improperly handling firearms in a motor vehicle, in addition to a firearm specification and two forfeiture specifications. Darr initially pleaded not guilty to the charges.

{¶4} Darr filed a motion to suppress challenging whether law enforcement had obtained the arrest warrant prior to initiating the stop of his vehicle. After holding a suppression hearing, the trial court issued an order denying the motion to suppress on October 25, 2016.

{¶5} The matter proceeded to a jury trial where Darr was found guilty of all the charges in the indictment. The trial court found that the counts of trafficking in cocaine and possession of cocaine were allied offense of similar import. The State elected for the trial court to impose sentence on the possession charge. The trial court ultimately imposed an aggregate prison sentence of ten years.

{¶6} On appeal, Darr raises five assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE COURT ERRED BY NOT SUPPRESSING ALL STATEMENTS AND PHYSICAL EVIDENCE AS THE RESULT OF A WARRANTLESS STOP AND ARREST.

{¶7} In his first assignment of error, Darr contends that the trial court erred in denying his motion to suppress. This Court disagrees.

{¶8} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion

of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

**Background**

{¶9}    In the motion to suppress, Darr challenged the legality of the traffic stop and his eventual arrest.  Darr argued that the stop of his vehicle on May 7, 2016, was not made pursuant to a warrant.  Specifically, Darr argued that law enforcement officials did not obtain a valid arrest warrant until several days after Darr was arrested.  Darr acknowledged that "[h]ad there actually been an arrest warrant issued for [him], the stop would have been perfectly legal."  Darr insisted, however, that the arrest warrant was not actually issued until May 9, 2016.  Darr attached multiple exhibits to his motion, including a journal entry showing that a judge had ordered the issuance of a capias on May 6, 2016, at 2:27 P.M., as well as an alert from the Lorain County Sheriff's Office indicating that Darr was known for running from the authorities and that he had pulled a handgun on a state trooper.  In support of his central position, Darr pointed to a printout of the online docket from his case in Lorain County that indicated the capias was not actually issued until May 9, 2016.

{¶10}  The trial court held a suppression hearing on October 20, 2016.  The only witness to testify at the hearing was Deputy Stevanus, a patrol deputy for the Medina County Sheriff's Office.  As he started his shift at approximately 10:00 p.m. on May 6, 2016, Deputy Stevanus learned that a "faxed copy" of an arrest warrant for Darr had been sent from Lorain County.  Because there was a warning suggesting that Darr was in possession of a firearm, Deputy Stevanus conferred with his sergeant regarding whether it would be prudent to serve the warrant that night.  They decided against going to Darr's apartment for officer safety reasons and, instead, to let the day shift attempt to serve the warrant.

{¶11} Deputy Stevanus made a point to keep an eye on the area where Darr lived while he was on patrol. After midnight, Deputy Stevanus noticed a silver Cadillac leave Darr's residence. The vehicle was linked to Darr. Deputy Stevanus testified that he ran a LEADS search which showed an arrest warrant for Darr out of Lorain County. Deputy Stevanus followed the vehicle and eventually initiated a traffic stop in Litchfield. Darr was identified as the driver of the vehicle and placed under arrest. Deputy Stevanus transferred custody of Darr to the Lorain County Sheriff's Department at the scene of the stop.

{¶12} The State introduced a certified copy of the arrest warrant as an exhibit at the hearing. The document did not bear a time stamp but it did contain an attestation indicating it is a true copy of the original on file with the Lorain County Clerk of Court. While the date of "5/10/16" was handwritten on front of the warrant, the Sheriff's Return on the back stated, "Received this Writ on May 6, 2016, and pursuant to its command I did, on May 7, 2016 execute[] it by arresting TIMOTHY J DARR and now have his/her body before the Court." The Sheriff's Return was signed by Deputy Yusko. During his testimony, Deputy Stevanus identified the "Caution/Wanted Subject" sheet indicating that Darr had previously pulled a handgun on a state trooper and that his vehicle may contain a rifle. Deputy Stevanus indicated that the sheet had a copy of the arrest warrant attached to it when it was faxed from Lorain on the evening of May 6, 2016. Though Deputy Stevanus testified that he had seen the capias that evening, he acknowledged that the language of his report stated only that he had been "made aware" of the capias. When pressed, Deputy Stevanus testified that he was "absolutely positive [he] saw an actual capias[.]" While the online docket printout attached to Darr's motion showed the capias being issued on May 9, 2016, a subsequent online docket printout that was introduced at the hearing showed that the capias was issued on May 6, 2016.

{¶13} In its journal entry denying the motion to suppress, the trial court determined that the documents submitted by the State were consistent with Deputy Stevanus's testimony that the warrant was issued and faxed to Medina on May 6, 2016. In light of the certified documents and Deputy Stevanus's testimony, the trial court concluded that the warrant was issued prior to Darr's arrest. The trial court further noted that the online docket printout suggesting the warrant was not issued until May 9, 2016 contained a "clerical error" and that the subsequent printout corrected that clerical error.

### Discussion

{¶14} On appeal, Darr argues that the State failed to meet its burden at the hearing of demonstrating that the warrant was issued prior to his arrest. Darr maintains that because the burden was on the State, the trial court should have ruled in his favor given that there were "two competing dates on valid court documents[.]"

{¶15} Darr's argument is without merit. At the suppression hearing, the trial court heard testimony from Deputy Stevanus and took note of the "competing dates" on the exhibits presented by the parties. Deputy Stevanus was adamant during his testimony that he saw a faxed copy of the arrest warrant for Darr on the evening of May 6, 2016. While the arrest warrant was not time stamped, the Sheriff's Return on the arrest warrant indicated that it was received on May 6, 2016, and executed on May 7, 2016. Though Darr suggests that the existence of competing evidence should have allowed him to prevail on his motion, it is well settled that the trial court is in the best position to resolve factual disputes that arise at a suppression hearing. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Moreover, this Court will not substitute its own judgment for that of the trial court regarding the weight given to Deputy Stevanus's testimony. *State v. Rogers*, 9th Dist. Wayne No. 16AP0014, 2017-Ohio-357, ¶ 11,

citing *State v. Thayer*, 9th Dist. Medina No. 11CA0045-M, 2012-Ohio-3301, ¶ 41. Under these circumstances, the trial court did not err in determining that the arrest warrant was issued prior to Darr's arrest.

{¶16} The first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE COURT COMMITTED PLAIN ERROR BY FAILING TO STOP THE HEARSAY AND REDIRECT TESTIMONY OF DEPUTY STEVANUS.

### ASSIGNMENT OF ERROR III

COUNSEL FOR THE DEFENDANT WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE IMPROPER REDIRECT AND HEARSAY EVIDENCE IN ASSIGNMENT OF ERROR TWO.

{¶17} In his second assignment of error, Darr contends that the trial court committed plain error when it failed to sua sponte strike Deputy Stevanus's testimony on re-direct examination regarding a bullet found on Darr's person during the booking process. In his third assignment of error, Darr contends that trial counsel rendered ineffective assistance by failing to object to the same testimony.

{¶18} A review of the trial transcript reveals that the State presented evidence that supported the following narrative. Prior to stopping Darr's vehicle in the early morning hours of May 7, 2016, Deputy Stevanus called on Deputy Taylor, and his field training officer, Deputy Brooks, to provide backup. Deputy Stevanus and Deputy Brooks approached the vehicle and took Darr into custody. When Deputy Taylor conducted a pat-down of Darr's person, Deputy Taylor discovered cash in the amount of $930, a check for $750, a lighter, and a digital scale that contained "a white powder residue." Deputy Taylor also discovered a large bag containing a white powdery substance, as well as smaller bag containing the same substance. Deputy Taylor testified that during the pat-down, Darr identified the white powdery substance as cocaine.

{¶19} When Darr was secured in the back of a cruiser, the officers proceeded to conduct an inventory search of Darr's vehicle. The officers found a Red Bull can that contained a false compartment that can be used "for concealing contraband, narcotics, [and] money[.]" The officers further found a broken pipe, a hypodermic needle, and a torch lighter. Finally, the officers located a loaded handgun locked in the glove compartment, as well as a bag containing loose bullets and another magazine on the floor of the backseat. The ammunition found on the floor of the backseat was compatible with the firearm found in the glove compartment, which was a .40 caliber Smith & Wesson semi-automatic handgun.

{¶20} The State presented the aforementioned evidence prior to Deputy Stevanus testifying at trial. Deputy Stevanus indicated on direct examination that he spoke with Darr at the scene of the arrest. With respect to the gun found in the glove compartment, Darr admitted that he knew about the gun but he denied that he was the owner. Darr insisted that the gun belonged to his brother's girlfriend. On cross-examination, Deputy Stevanus clarified that Darr asked for a description of the gun before he identified it as belonging to his brother's girlfriend. Darr explained that his brother had used the gun to go shooting the previous day. Deputy Stevanus further explained on cross-examination that the car was owned by Darr's mother and was used by both Darr and his brother. On re-direct examination, Deputy Stevanus was asked if law enforcement found any additional evidence on Darr after he was turned over to the Lorain County Sheriff's Office. Deputy Stevanus responded, "They located a .40 caliber bullet round in his shirt sleeve."

**Plain Error**

{¶21} Darr contends that the trial court committed plain error by failing to strike the statement regarding the .40 caliber round discovered in his shirt sleeve during the booking

process. Darr contends the statement was hearsay and went beyond the scope of proper re-direct examination. Darr further argues that the testimony invited a litany of speculation about how the bullet was discovered and merited an opportunity for further questioning.

{¶22} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995). A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶ 12. "Plain error exists only where it is clear that the verdict would have been otherwise but for the error." *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 52, quoting *State v. Long*, 53 Ohio St.2d 91, 97 (1978).

{¶23} Darr's plain error argument is without merit. "We will not reverse for plain error unless the appellant established that the outcome of the trial clearly would have been different but for the alleged error." *State v. Kobelka*, 9th Dist. Lorain No. 01CA007808, 2001 Ohio App. LEXIS 4951, *5 (Nov. 7, 2001), citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996). Even assuming without deciding that Deputy Stevanus's testimony was improper, Darr has not demonstrated that the outcome of trial would have been different if the trial court had stricken the testimony. The testimony offered by Deputy Stevanus on re-direct examination had no bearing on Darr's convictions for trafficking in cocaine and possession of cocaine. With respect to the firearm charge and the attendant specification, the State presented evidence showing that the ammunition in the backseat was compatible with the gun found in the vehicle. The State also presented evidence that Darr admitted to knowing about the weapon in the glove compartment,

although he denied that it belonged to him. Under these circumstances, Darr has not demonstrated that the result of the trial clearly would have been different had the trial court stricken Deputy Stevanus's testimony about the .40 round discovered on Darr's person during the booking process.

**Ineffective Assistance**

{¶24} In support of his ineffective assistance claim, Darr renews his position regarding the problematic nature of Deputy Stevanus's testimony on re-direct examination and argues that trial counsel rendered ineffective assistance by failing to object. Darr maintains that the bullet in his shirt was the strongest piece of evidence linking him to the gun, particularly given that the ammunition and the gun were not found on his person.

{¶25} In order to prevail on a claim of ineffective assistance of counsel, Darr must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Darr must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at 687. Second, Darr must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith* at 534.

{¶26} Darr has failed to demonstrate that there is a reasonable probability that the result of trial would have been different but for trial counsel's failure to object. Though Darr suggests

that the .40 caliber round found in his shirt sleeve was the strongest piece of evidence linking him to the gun, we note that the ammunition found on the floor of the backseat was also compatible with the gun. More significantly, Darr admitted to Officer Stevanus that he knew about the gun in the glove compartment. Thus, we cannot accept Darr's contention that there is a reasonable probability that the result of trial would have been different if trial counsel had objected to Deputy Stevanus's testimony on re-direct examination.

{¶27} The second and third assignments of error are overruled.

### ASSIGNMENT OF ERROR IV

THE CONVICTION FOR IMPROPER HANDLING AND THE FIREARM SPECIFICATION [ARE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶28} In his fourth assignment of error, Darr suggests that his convictions for improperly handling a firearm and the firearm specification were against the weight of the evidence. This Court disagrees.

{¶29} In his merit brief, Darr likens his manifest weight challenge to his ineffective assistance challenge with respect to the prejudicial impact of Deputy Stevanus's testimony on re-direct examination. Darr suggests that had Deputy Stevanus been prohibited from testifying about the bullet found on Darr's person during the booking process, the weight of the remaining evidence would weigh against conviction. Darr further contends that he never actually admitted to having knowledge that there was a gun in the vehicle. Darr maintains that this case is analogous to the scenario confronted by the Eighth District in *State v. Willis*, 8th Dist. Cuyahoga No. 89044, 2008-Ohio-444, with the only significant difference being that Darr had no knowledge of the gun located in the glove compartment and only recognized it when it was described to him.

{¶30} Darr was convicted of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B), which states, "No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B). Darr was also found guilty of the attendant firearm specification pursuant to R.C. 2941.141(A), a statute that provides for the imposition of a one-year mandatory prison term under circumstances where "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense."

{¶31} When a defendant argues that his convictions were contrary to the weight of the evidence, this Court must review all of the evidence before the trial court:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v.*

*Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶32} After a careful review of the record, we cannot say that this is the exceptional case where the evidence weighs heavily against conviction. Though Darr analogizes this case to the Eighth District's decision in *Willis*, his manifest weigh argument ultimately rests on his assertion that he never admitted to knowing about the firearm in the glove compartment. In *Willis*, the court affirmed the appellant's conviction for carrying a concealed weapon, based in part on the fact that Willis told an officer that he knew about the gun in the glove compartment of the vehicle he was driving. *Willis* at ¶ 69-70.[1] At trial here, Deputy Stevanus was asked, "[W]hen you asked [Darr] about the handgun, he told you he knew about the handgun but he said it was owned by someone else?" Deputy Stevanus responded, "Correct." On cross-examination, Deputy Stevanus was asked if Darr's initial reaction was simply, "That's not my gun[.]" While Deputy Stevanus was unable to recall that specific statement, he later testified that the gun was not registered to Darr and that Darr initially denied ownership of the gun. Deputy Stevanus further acknowledged that Darr first asked for a description of the gun before he indicated that the gun belonged to his brother's girlfriend. It is well settled that "[t]his Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe the testimony of a particular witness." *State v. Eutin*, 9th Dist. Wayne No. 14AP0021, 2015-Ohio-924, ¶ 15, citing *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Moreover, "'the jury is free to believe all, part, or none of the testimony of each witness.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24,

---

[1] Though Willis testified at trial that he did not know his brother's gun was in the glove compartment, one of the responding officers testified that Willis admitted at the scene that he knew the gun was there. *Willis* at ¶ 34, ¶ 70.

quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35.  Here, while Deputy Stevanus's testimony may have been disjointed at certain points, he testified that Darr admitted to knowing about the gun in the vehicle.  Regardless of whether the subsequent testimony on re-direct examination was proper, a reasonable juror could have taken the testimony regarding Darr's admission, coupled with the evidence about the ammunition found in the back seat area, and determined that Darr had knowledge of the gun in the glove compartment. In light of the foregoing, we cannot say that Darr's convictions resulted in a manifest miscarriage of justice.

**{¶33}**  The fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

THE CONVICTIONS FOR BULK COCAINE POSSESSION AND TRAFFICKING WERE INSUFFICIENT UNDER THE GONZALES STANDARD THAT SHOULD HAVE BEEN APPLIED IN THIS CASE.

**{¶34}**  In his final assignment of error, Darr argues that his convictions for possession of cocaine and trafficking in cocaine were insufficient under the standard set forth in *State v. Gonzales*, 150 Ohio St.3d 261, 2016-Ohio-8319 ("*Gonzales I*").  This Court disagrees.

**{¶35}**  In support of his assignment of error, Darr suggests that the standard set forth in *Gonzales I* should be applied retroactively to this case given that the decision was issued just one day after the trial court issued its sentencing entry in this matter.  Darr further argues that the Supreme Court of Ohio improperly granted the motion for reconsideration of its decision in *Gonzales I*, and that the Supreme Court's decision in *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777 ("*Gonzales II*") should not be applied retroactively.

**{¶36}**  Darr was convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(2), (C)(4)(f), as well as possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(e). R.C.

2925.03(C)(4)(f) states, in part, that "[i]f the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine * * * trafficking in cocaine is a felony of the first degree[.]"  In turn, R.C. 2925.11(C)(4)(e) provides, in part, that "[i]f the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine, possession of cocaine is a felony of the first degree[.]"

{¶37}  Zach Dawson, a forensic scientist for the Ohio Bureau of Criminal Investigation, testified on behalf of the State at trial.  Dawson testified that the larger bag found on Darr's person contained a white powdery substance that weighed 28.24 grams.  Dawson further testified that the substance tested positive for cocaine.  The smaller bag found on Darr's person contained a white powdery substance that weighed 0.66 grams.  This substance also tested positive for cocaine.  With respect to the accuracy of the measurements, Dawson indicated that their balances have a measurement currency of plus or minus .04 grams.  On cross-examination, when asked whether the substances he tested contained "pure cocaine[,]" Dawson explained that BCI does not quantify the amount of cocaine within a substance.

{¶38}  In *Gonzales I*, the Supreme Court of Ohio held that in prosecuting cocaine possession offenses pursuant to R.C. 2925.11(C)(4)(b)-(f) involving mixed substances, the State must demonstrate that the weight of the actual cocaine, excluding any filler material, satisfied that statutory standard.  *Gonzales I*, 150 Ohio St.3d 261, 2016-Ohio-8319, at ¶ 22.  The State subsequently filed a motion for reconsideration, arguing that *Gonzales I* was decided in error due to an inconsistent application of the principles of statutory construction.  The Supreme Court thereafter issued a decision granting the motion for reconsideration.  *Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777.  In *Gonzales II*, the Supreme Court determined that when giving effect to the statute as a whole and to the intent expressed by the legislature in the language of the statute,

"the applicable offense level for cocaine possession under R.C. 2925.11(C)(4) is determined by the total weight of the drug involved, including any fillers that are part of the usable drug." *Gonzales II* at ¶ 18.

{¶39} Darr's argument with respect to the authority of the Supreme Court's decisions in *Gonzales I* and *Gonzales II* is not well taken. As an initial matter, Ohio court decisions generally apply retroactively, unless a party has vested rights under a prior decision. *State ex rel. Jones v. Husted*, 149 Ohio St.3d 110, 2016-Ohio-5752, ¶ 26, citing *DiCenzo v. A-Best Prods. Co., Inc.*, 120 Ohio St.3d 149, 2008-Ohio-5327, ¶ 25. An Ohio court has discretion to apply its decision prospectively only under certain circumstances. *State ex rel. Jones* at ¶ 26. Significantly, however, there is no language in *Gonzales II* indicating that the Supreme Court intended for the decision to only be applied prospectively. Moreover, while Darr questions the holding of *Gonzales II*, we are mindful that a court of appeals cannot simply disregard the precedent of the Supreme Court. *Simon v. Zipperstein*, 32 Ohio St.3d 74, 77 (1987). As noted above, the State presented testimony that the two bags found on Darr's person at the time of his arrest contained a total of 28.90 grams of a white powdery substance that tested positive for cocaine. Under *Gonzales II*, this was sufficient to demonstrate that Darr's convictions for possession of cocaine and trafficking in cocaine qualified as first-degree felonies pursuant to R.C. 2925.11(A),(C)(4)(e) and 2925.03(A)(2), (C)(4)(f). Darr's final assignment of error is overruled.

III.

{¶40} Darr's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

SEAN BUCHANAN, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.